Are you ready? Yes. Good afternoon, Justices of the Second Circuit. This is Thomas Lengel on behalf of the plaintiff appellant, Mr. Ziwi Mpala. Yes, Your Honors, this case arises out of a 1983 unlawful arrest incident that happened on the Yale University campus in New Haven. So were you the attorney below? Was I the attorney below? Yes, I was, Your Honor. So whether or not you stipulated to probable cause, isn't there probable cause looking at the facts? Say it again, Your Honor. Even though the question that you choose to brief is whether the stipulation that you made regarding probable cause is dispositive, weren't the facts enough to show probable cause? No, Your Honor. We believe that there was not probable cause in this case independent from the stipulation issue. We state in our brief at page 2 that the evidence will reveal that the Yale police had no probable cause by which to arrest this plaintiff. This statement is made without reference to the stipulation. Okay. But let's talk about whether there was probable cause. Sure. Mr. Impala was found in the library. Yes. He left some garbage there the first time. When he was asked to identify himself, he had three different forms of ID, none of which is the one that identified him. Isn't that probable cause? No, Your Honor. With all due respect, no, Your Honor. We believe there's some confusion as to this identification story. He had three different IDs, didn't he? It does look that he had certain IDs, Your Honor, but that's because he had three different ones, and none of which were his. Well, Your Honor, the issue there, in my understanding, is that Mr. Impala has had several names over the course of the years, and so he's gathered certain identification items, and that's why there was some confusion there. But I don't believe that that issue goes directly to the government. It's not interference with government, doesn't it? It does go to that claim, Your Honor. Isn't there probable cause then? No, I don't think that alone rises to the level of probable cause. And I think, Your Honor, it's important to understand, too, that this defendant was on the campus just the day or two before by way of invitation for a certain function at the law school. This occurred at the Yale Law School. It was a week before, I believe, not the day before. Okay. Well, in any event, Your Honor, you know, my ---- Did the invitation extend for a whole week? No, no. I don't think that, Your Honor. I'm just trying to establish the background for why Mr. Impala felt comfortable being on the premises. Well, maybe he felt comfortable, and maybe he made a mistake, and maybe he's not guilty of trespass, and maybe the IDs were all innocently held, and he couldn't be convicted of anything. But that's not the issue. The issue is, if the police find somebody there who has no other reason to be there than I was invited to something last week, and who then shows them what would appear to a reasonable officer to be false and contradictory identification documents, doesn't that give them a reasonable basis to think they should arrest him? I don't think that alone does give a reasonable basis. It's my understanding that probable cause is based on a multi-factor analysis, and I do see your point, Your Honor. Certainly, that is a point on that issue, but I don't think it tips the scales in favor of probable cause on a larger level. I also think it's important, Your Honor, if I may change gears, to still answer your questions, just to change gears slightly, that right after this incident happened, Mr. Impala made a timely request for the surveillance tapes. These surveillance tapes would, if they were here right now, would be able to tell us the truth. The surveillance tapes— Did he deny that he was in the library? No, no, no. What are the surveillance tapes? What would they prove? They would show the approach of the officers and whether it was reasonable for them to attack him after he came out of the laboratory, whether it was reasonable for them to think that he was in a trespassing mode. Counsel, I would ask you if you had any case law to support your theory, but unfortunately you neglected to cite a single case in your brief, so I can't find anything that would support your theory that the way they approached him takes away from the probable cause that the officers had. Well, yes, Your Honor. I understand, and I could have done a better job on that, but I think it's important to understand that the spoliation standard has recently been articulated at the Federal District Court in Connecticut. I don't have a case cite, but it's a very well-articulated and well-known standard. And my point about the spoliation here that's so important, especially in this day and age of racial profiling, this was a situation that if we had the surveillance tapes, all of these questions could have been answered. So even if— I'm having trouble understanding what questions we're talking about that would be answered. The question of whether there was independent probable cause to arrest Mr. Impala. I guess I don't understand. He's there and he's not authorized to be there, right? And the police know that because they've had prior contact with him and he's been banned from the campus. Well, no. I think the ban, Your Honor, I'm glad you raised that, took place, the official ban letter, which, by the way, is at page 172 of my appendix. It's a ban letter that I'd like to read into the record if I could, Your Honor. We only have a few seconds left. Sure. What page is it? You don't have to read it in. Yeah, page 172. That occurred. This took place, this ban—I call it the ban letter. It's just one sentence I'd like to read. I am writing now to inform you that you are no longer permitted to be present on any part of the Yale campus. Should you be found again on the Yale campus, you will be arrested for trespassing. This is a longtime New Haven resident, and they're now banning him from any Yale property for life. Yale owns almost every street corner. So this is a serious civil rights injury here. And the arrest leading up to that is then followed by a second arrest, and that second arrest is a companion case that is also before the Second Circuit Court of Appeals. And so I think it's important to understand that, you know, again, if we have these tapes, these tapes that were destroyed, and the destruction is discussed at page 178 of my appendix, if we have these tapes, these questions, in my opinion, could have been answered. Your appendix is only 11 pages. So I found page 172, but I can't locate page 178. But in any event, your time has expired. You have reserved two minutes for rebuttal. Yes, Your Honors. We'll hear from the attorney for the officers. Good afternoon. May it please the Court. I'm Kevin Shea from Clendenin and Shea in New Haven, Connecticut. I represent the defendants who were police officers with the Yale Police Department. Your Honor, you're exactly right. There are two separate and independent bases on which the district court, Judge Merriam, granted summary judgment. Either one of them independently is enough to end this case and this appeal, because the plaintiff has not appealed either one of them on the merits. The court dealt with the stipulation first, but because you started with the probable cause in fact, I'll address that first. As an initial matter, probable cause in fact was found precisely on the basis that you articulated. There were two charges here. One was criminal trespass. Second, as Judge Merriam cited, that required only that the plaintiff enter or remain in a building where he knew he didn't have license or privilege to be. The undisputed facts in this case show that the plaintiff admitted all of the assumptions and essential elements to that. He admitted that the Yale Law School security guard called the Yale police and reported a suspicious person. He admitted that he was identified as that suspicious person. And he admitted that he was on private property and he knew he didn't have license to be there. Your Honor is correctly pointing out he had attempted to claim that he was invited there previously. That event had long since passed. And then he tried to claim that he knew somebody who was walking in the library and the gentleman said he didn't know him and had not invited him there. The other charge that was made was for interfering with an officer. Under Connecticut law, as Judge Merriam recited, both providing fake names and failure to provide a real name constitute interference with an officer. He did produce three different IDs with three different names, none of which were his legal name at the time, which was David Gethers. This is important because the plaintiff was also on Federal supervised release at the time. So Judge Merriam properly found probable cause, in fact, for both of those charges based on the record independent of the stipulation. The plaintiff hasn't appealed that. He's only claimed that she erred in finding an absence of malice sufficient to support his malicious prosecution claim in the second count. He brought malicious prosecution and false arrest both under 1988 and 1983. Judge Merriam, in a footnote, I believe it's footnote 3 in her summary judgment motion, in dicta essentially, made a passing observation that neither of the parties addressed the issue of malice, whether there was malice sufficient to support the plaintiff's claim. And she said that that would be a separate basis. That would have been a third basis. It did not affect her ruling on the motion for summary judgment. And when the plaintiff raised it in his motion for reconsideration, she articulated that and said it in no way affected the other two independent bases for her ruling. So the plaintiff hasn't appealed on that basis. The malice, the spoliation claim, there's no spoliation. The request that the plaintiff cites that came two days after his arrest, if you look in the record, I believe that is, excuse me. It's Plaintiff's Appendix 48. Oh, that's the reconsideration ruling. I'm sorry. His request is Plaintiff's Appendix D, page 173. That request was made to the New Haven Police Department, which is not the Yale University Police. And it wasn't a request for the preservation of anything. It was a request for his own record of arrest. Well, that's not even a defendant. Correct. The Yale police officers, as Your Honors may know, are full New Haven police officers, but they are not the New Haven police. They are paid by Yale University, but they are full officers, which is why we're here on a 1983 and 1988 claim. But he never made a timely request. There's no evidence of it. But Judge Merriam says in any event she gave several opportunities for the plaintiff to amend his complaint, and the plaintiff never amended his complaint to bring a spoliation claim. So there's nothing for the Court to consider on that basis. There was no malice inherent in it. There was no — the absence of malice was not in any way a part of her ruling on summary judgment. It was dicta, and there was no spoliation claim. I want to start where — I want to go back to where the Court starts and where I — we started in the case. The stipulation to probable cause is a very serious stipulation. It bears emphasis that that stipulation was the bargain, the quid pro quo. It was expressly the condition for the dismissal of the underlying criminal charges that the plaintiff sought. His criminal lawyer, his public defender, had — was able to get a nollie, and the transcripts reveal the Court was going to nollie those claims. The plaintiff has been very clear. His testimony is clear and the record is clear, and Judge Merriam cites it repeatedly. The plaintiff did not want to accept a nollie. He wanted a dismissal. Attorney Richards, his public defender who was representing him for the underlying criminal charges, explained to him that he was not going to get a dismissal without stipulating to the existence of probable cause. And the reason for that is obvious, and it's precisely so that a plaintiff who obtains a dismissal in that way can't turn around and bring these claims. He can't challenge that now. He can't — it's cliché, but it applies perfectly here. He can't have his cake and eat it, too. He got the dismissal, the full dismissal that he wanted, and he never sought to undo it when he claims it was sprung on him, that he didn't know that his lawyer had to stipulate to the existence of probable cause in order to do that. That's why, from the get-go, about three-and-a-half years ago, we've been trying to get the case dismissed on that basis. The case was originally transferred with the party's consent from Judge Shea to Judge Garfinkel. I moved for judgment on the pleadings on that basis, and Judge Garfinkel cited the appropriate legal standard. He said what the exceptions are that — that might apply where a lawyer might not be bound by the stipulations of his counsel. And they were identified as when the lawyer is guilty of misconduct, such that his conduct is fraudulent. When the lawyer acts grossly or inexcusably, such as bad faith or intentional neglect of the client, or if the lawyer was outrageously in violation of either the client's express instructions or the lawyer's own duties. We attempted to pursue that by deposing the plaintiff and the public defender. The public defender claimed attorney-client privilege. The plaintiff's counsel refused to waive it. We then had to move the court to compel him to be deemed to have waived the privilege or for judgment on the pleadings. At that point, it was with Judge Smith. Judge Smith said you need to ask him again to waive it with the warning that if he doesn't waive it, the case is going to be dismissed. The plaintiff waived attorney-client privilege finally. We deposed the public defender. The public defender confirmed exactly that he had been authorized to do what the plaintiff asked and that none of the exceptions applied. Therefore, on that separate and independent basis, the Court properly found that he was also bound by the stipulation of his counsel and none of the exceptions apply. Thank you. Thank you. We respectfully request the Court to affirm the judgment below. Ms. Alito. You have two minutes. Yes, Your Honor. Starting off, if I may, with the spoliation issue, it's also important to understand at page. Did you plead it? Excuse me? Did you plead the spoliation issue? Not. Does it appear in any document before us? Not formally as of the time of this. Just a minute. You either pled it or you didn't. No, no. Not at the time of the summary judgment ruling. But I was a new attorney that came into the case and my intention was to amend the complaint. Then we lost the case, so I could not do that. But you never brought it to the attention of the district court. Oh, no. We brought it to the attention of the district court in the motion for reconsideration and in several other contexts. There was also a motion to compel for the missing tapes. That's at my appendix, page 175, that was filed by the presiding public defender in the underlying criminal case. There was a formal motion to compel asking for the tapes, which mysteriously went missing. And that's important at page 175. You found it. Okay. If I may move on. Is there anywhere in the record any statement by Mr. Impala or anyone else as to what it is contended the tapes would have shown? By any other witness? By Mr. Impala or anyone. Is there any assertion or claim as to what happened that the tapes would show? Well, I mean, I think it's clear. He has told me in several conferences that he had the permission to go on, to go to the restroom. And then when he came out of the restroom is when they attacked him. But, wait, the permission, somebody gave him permission, and that giving of permission is on a tape? Well, I think that you would, if a tape were watching someone interacting with a guard and you asked for permission, it would show the guard letting you through. So that would show that he had permission. Then after he left, he forgot his bag, came back, and that's when he got arrested. That's how I understand it, Your Honor. All right. In summation, because your time has expired. Yes. In summation, I think that the Norm Pattis article sums up the facts of this case here and shows why this case should be remanded. It's at page 170 of my appendix. Thank you. Thank you. Thank you.